## MOULTON'S PETITION.

A party entitled to appeal from a decree of the judge of probate died four days before the expiration of the sixty days limited by statute (Gen. Stats., ch. 188, § 2) within which such appeal may be claimed. On the day after his death, his counsel, previously instructed to that effect, in due form claimed an appeal from said decree, being at that time ignorant of the decease of their client. At the next law term, the death of the appellant being suggested, and no administrator appearing, the appeal was dismissed.

Upon application for relief under Gen. Stats., ch. 188, § 7,—*held,* that the attempt to appeal from said decree was prevented through misfortune and not from neglect.

Leave to appeal will be granted under the provisions of Gen. Stats., ch. 188, §§ 7, 8, 9, only when it appears that injustice has been done by the decision from which appeal is claimed; but if it appear that the petitioner has proceeded in good faith, that there are important questions in issue which the party claiming the appeal desires and intends to try, and if some evidence be offered tending to sustain the allegations of reason for appeal, the requirements of section 9 will be regarded as fulfilled, and leave to appeal will be granted without a full preliminary investigation of the merits of the controversy. *

This was a petition of Augustus F. Moulton, administrator, for leave to appeal from the decree of the judge of probate.

The facts are sufficiently disclosed in the opinion of the court.

*Butler* (with whom was *J. H. George),* for the petitionees.

The petitionees say that the prayer of this petition ought not to be granted, for the following reasons:

---

* And see *Woodworth* v. *Wilson, ante,* p. 220.     REPORTER.

1. Because Messrs. Marshall & Chase had no authority from Ezra Carter, Sr., to claim an appeal in his behalf. Whatever was done by them was pursuant to instructions from Ezra, Jr., and entirely unauthorized by his father. See cross-examination in deposition of Ezra Carter (formerly Ezra Carter, Jr.); also, answers to Int's 8, 10, 11, and 15, in the deposition of Wm. M. Chase. We submit that the fair inference from all the evidence is, that Ezra Carter, Jr., being a residuary legatee in the will of his father, directed in this matter for his own benefit and without any authority from his father.

2. If Ezra Carter, Jr., had authority to act for his father in this matter, then we say the failure to secure the appeal was occasioned by " his own neglect," and the court will not relieve him. General Statutes, chap. 188, sec. 7. It is not claimed that he directed Marshall & Chase to take an appeal, until the letter of March 9, 1868; and further necessary information was not furnished till March 11th. See answer to Int. 11, in deposition of Mr. Chase. Ezra Carter, Jr., was and still is one of the executors of the will of Phebe W. Hazeltine, and had notice of every step taken in relation thereto; he was also aware of the great age and feebleness of his father, and yet he delayed till near the last of the sixty days, and till the last day of his father's life. *French's Petition*, 17 N. H. 472.

3. There is no evidence *tending* to show that injustice was done by the decree of the judge of probate. Miss Hazeltine had the right to make such disposition of her property by will as she deemed proper, and we think the court will not, in the entire absence of evidence and against the decree of the probate court, *presume* that she was of unsound mind, or unduly influenced, or that any injustice has been done by her will. The petitioner must " show the court that injustice has been done by the decree of the judge of probate," or *at least* a *prima facie* case of injustice. *Buffum* v. *Sparhawk*, 20 N. H. 83; *French's Petition*, 17 N. H. 476; 45 N. H. 323 and 324; 1 Gray 522; *Bean* v. *Burleigh*, 4 N. H. 553.

*Marshall & Chase*, for the petitioner.

The petitionees suggest three reasons why the prayer of this petition should be denied. We assume that they do not claim that any other reasons exist; and, as we believe no others can be suggested, we shall confine ourselves to answering these:

1. It appears that Ezra Carter, Sr., was a very aged man—almost ninety-five years old—at the time of his death. In consequence of his age he relied upon his son, Ezra, Jr., to look after and manage his business affairs. After the death of Miss Hazeltine, he consulted his daughter, Mrs. Moulton, and her son, and also Ezra, Jr., about taking steps to set aside her will, and finally authorized and directed that an appeal should be taken in his name from the probate of said will, and we were employed for that purpose. He and his son had several talks upon the subject at different times soon after the decease of Miss Hazeltine. In short, Mr. Carter's deposition distinctly shows that he

was the general agent of his father, and, as such, he was fully authorized to commence and prosecute the appeal. More than that, it distinctly shows that he felt aggrieved by the will of Miss Hazeltine and the probate thereof, and confided the protection and assertion of his rights in her estate specially to his son. We had authority from Ezra, Sr., through the son, to claim the appeal in his behalf.

If an administrator had been appointed upon the estate of Ezra Carter, Sr., within (sixty days after the death of Miss Hazeltine he could have taken the appeal in question within) said sixty days, even if his intestate had taken no steps to that end in his lifetime. But Mr. Carter did not die until four days before the expiration of said sixty days, so that there was not time to procure the appointment of an administrator upon his estate and to claim the appeal before the limitation expired. The statute gives full sixty days in which to exercise the right of appeal ; and before this time expired the party entitled to exercise this right died, and there was no one to represent him during the remainder of the sixty days. Here was such " an accident or misfortune" as is contemplated by the statute, and authorizes the granting of the prayer of this petition, even if Mr. Carter did not commence an appeal in his lifetime.

2. The proceedings for the appeal in this case were instituted seasonably, but were defeated by a misfortune that could not be foreseen, and not by negligence of the appellant or his counsel. It was no negligence for him to wait, even if he had waited till the last of the sixty days, before claiming the appeal: the statute gives him that right. The appeal would have been well enough if he had lived, but his death, under the circumstances of the case, was the misfortune which defeated it. The *neglect* contemplated by the statute is a careless omission for the *whole sixty* days to claim the appeal, or a careless *manner* of claiming it within the sixty days.

3. The cases cited by the counsel upon the other side, to sustain his third position, are overruled by the later case of *Mathews* v. *Fogg*, 35 N. H. 291. To the same effect are *N. E. Mut. Fire Insurance Company* v. *Lisbon Manuf. Co.*, 22 N. H. 170, and *Nashua and Lowell Railroad* v. *Stimpson*, 35 N. H. 287, in the kindred cases of petitions for new trials, in which the provisions of the statute (General Statutes, chap. 215, sec. 5, or Rev. Stat., chap. 192, sec. 2) are similar to those under which this petition is filed. (Gen. Stat., chap. 188, secs. 7 and 9.) Under the rule laid down in these cases, it was not necessary to show that injustice has been done by the decree of the judge of probate. That is a matter to be shown upon the appeal, and not at this time. It is unreasonable to require the merits of the case to be tried twice,—once upon the petition for appeal, and again upon the appeal itself. It sufficiently appears in this case that there are actual matters of controversy (namely, the sanity of Miss Hazeltine, and the influence that operated upon her mind when she made her will) which Ezra Carter in his lifetime desired to litigate, and which his administrator now desires and intends to litigate : if not, why was an appeal commenced before Mr. Carter's death, and why these proceedings ?

FOSTER, J.   This is a petition by the administrator with the will annexed of the estate of Ezra Carter, late of Scarborough, Maine, for leave to appeal from the decree of the judge of probate for the county of Merrimack, approving and allowing the will of Phebe W. Hazeltine, late of Concord, in said county, and is founded upon General Statutes, chap. 188, sec. 7.   Said decree was made January 14, 1868, and the sixty days within which an appeal could be claimed expired with March 14, 1868.   It appears that on the 11th day of March, 1868, Messrs. Marshall & Chase, in behalf of said Ezra Carter, filed in the probate office for said county a claim for an appeal from said decree ; and the accident or misfortune alleged is, that said Ezra Carter, being an heir-at-law of Miss Hazeltine, and feeling himself aggrieved by said decree, instructed his attorneys, Messrs. Marshall & Chase, to claim an appeal therefrom in his behalf ; that in accordance with said instructions, and within sixty days from the date of probate of the will, to wit, March 11, 1868, his said attorneys filed in the probate office a claim in writing for such an appeal, setting forth said Carter's interest and the reasons of his appeal, in conformity with the provisions of the law.   (Chap. 188, § 2, Gen. Stats.)

The petitioner alleges that Mr. Carter died on the 10th of March, the day preceding the filing of the claim for an appeal, of which fact his attorneys were ignorant at the time of filing said claim ; that said appeal was entered in this court at the law term in June, 1868, when, the death of Mr. Carter being suggested upon the records thereof, the court decided that no further action could be taken in the matter ; that December 1, 1868, the petitioner was appointed by the court of probate in Maine administrator with the will annexed of Mr. Carter's estate ; and that on the 28th of April, 1869, he was also appointed such administrator by the court of probate in our county of Merrimack ; that in consequence of Mr. Carter's death, and the delay consequent upon the necessity for procuring the appointment of the administrator, the petition for leave to appeal was not sooner presented.

The reasons alleged for the claim for an appeal, filed in the probate court, March 11, 1868, were: "1. Because the said Phebe W. Hazeltine, at the time of making said instrument, was not of sound and disposing mind and memory.   2. Because the execution of said instrument was obtained by undue influence exerted and operating on the mind of the said Phebe W. Hazeltine."

All the proceedings seem to have been in legal form.

The first objection to the present petition is, "Because Messrs. Marshall & Chase had no authority from Ezra Carter, Sr., to claim an appeal in his behalf."

Ezra Carter, Sr., was a very aged man—almost ninety-five years old —at the time of his death.   In consequence of his great age and infirmity, he relied upon his son, Ezra, Jr., to look after and manage his business affairs.   After the death of the testatrix, he consulted his daughter and her son, and also Ezra, Jr., about taking steps to set aside her will ; and although, on account of his great age, he did not enter into details, and was not consulted with regard thereto by his son, to whom

the general management of his interests was confided, yet we are entirely satisfied, from all the evidence, that express authority was given to his son to take such steps as he should deem necessary in behalf of the old gentleman, to contest the validity of the will by appeal from the decree of the court of probate, and that, in pursuance of that authority, Messrs. Marshall & Chase were employed, and acted in good faith, as the legal counsel and attorneys of the old gentleman.

The second objection to granting the relief prayed for is, that the delay in taking the appeal from the probate of the will is attributable to the petitioner's own neglect.

We are entirely unable to see any ground whatever for this objection to rest upon. And upon this branch of the case we adopt the language of the petitioner's brief:

" The proceedings for the appeal were instituted seasonably, but were defeated by a misfortune that could not be foreseen, and not by negligence of the appellant or his counsel. It was no negligence for him to wait, even if he had waited till the last of the sixty days, before claiming the appeal: the statute gives him that right. The appeal would have been well enough if he had lived, but his death, under the circumstances of the case, was the misfortune which defeated it. The neglect contemplated by the statute is a careless omission for the whole sixty days to claim the appeal, or a careless manner of claiming it within the sixty days.

" Mr. Carter did not die till four days before the expiration of said sixty days, and so there was not time to procure the appointment of an administrator upon his estate, and to claim an appeal before the limitation expired."

The third and last objection suggested by the petitionee is, that " there is no evidence tending to show that injustice was done by the decree of the judge of probate."

The Gen. Stats., ch. 188, § 9, provide that " if it appear that the petitioner has not unreasonably neglected to appeal, and that injustice has been done by the decision of the judge, such appeal shall be allowed, heard, and tried on such petition."

In *Buffum* v. *Sparhawk*, 20 N. H. 81, it was held that the appeal should be dismissed, because the petitioner did not go further than to establish the fact of accident and misfortune, without his own neglect; but it was said, "it still remains for him to show the court here that injustice has been done by the decree of the judge of probate." And to the same effect are *Bean* v. *Burleigh*, 4 N. H. 553, and *French's Petition*, 17 N. H. 472.

But these cases seem to be substantially overruled by the decision in *Matthews* v. *Fogg*, 35 N. H. 291, in which the court (FOWLER, J.) remarked : " It distinctly appears that important matters of fact and questions of law arose in the hearing before the judge of probate, the right to investigate which before the supreme court of probate has been lost to the petitioner by accident or misfortune, without any fault or neglect on her part. If the decree stands unappealed from, injustice will be done to the petitioner, inasmuch as she will be precluded

from litigating important rights and questions before the tribunal whose judgment she was entitled and intended to have upon those rights and questions.

"And it is not usual or necessary to investigate fully the merits of the controversy between the parties on the petition for appeal. That can much better be done upon the appeal itself, than in a mere preliminary proceeding like the present."

This decision was made in 1857, when the statute concerning the subject-matter was precisely the same as the present statute; and we think it is founded in good sense.

Every person aggrieved by any decree of a judge of probate which may conclude his interest, and which is not strictly interlocutory, may as matter of right appeal therefrom, whether the decision of the judge is right or wrong; whether it is calculated to work injustice or not; whether there has been full opportunity for investigation or not; and whether the party has chosen to avail himself of the opportunity for a full investigation or not.

This *right* of appeal is so clearly conferred, and so plainly understood by the people, that, we suppose, it is very often relied upon and exercised in cases where, at the appointed time for the hearing in the inferior tribunal, it may be simply inconvenient for the party or his witnesses to attend; and in other cases where it is quite manifest, on account of the gravity and difficulty of the questions involved, neither party would be satisfied to accept an adverse decision from any other tribunal than that of the last resort.

Thus it very often happens, that what is called the *solemn* probate of a will is matter of form merely, preliminary to the contestation of its validity in the supreme court of probate.

If, then, for any of the reasons suggested, important questions of law and fact are involved in a proceeding which a party in interest intends to litigate and has the right to litigate by appeal from a decision of the judge of probate (whether that decision be deliberate or merely formal), and it appears that without the petitioner's neglect, but solely through mistake, accident, or misfortune, he is deprived of that right, injustice has been done by the decision of the judge, within the intendment and fair construction of the 9th section of the statute of appeals (chap. 188), and "such appeal shall be allowed, heard, and tried on such petition."

In the language of GILCHRIST, J., in *Parker's Appeal*, 15 N. H. 26 (after reference to the then existing statute, identical in terms with the present section 9 of chap. 188), "it would be unjust to the parties interested if [by reason of a mistake of law, without neglect] the merits of the question could not be examined by the supreme court of probate."

In the analogous case of a petition for a new trial, GILCHRIST, C. J., in *Ins. Co.* v. *Lisbon Manuf. Co.*, 22 N. H. 170, says: "Sometimes, where the whole case is contained in and appears from the papers, and the parties submit the whole matter to us for decision, we have examined the merits of the case, and, if it has appeared that no injustice has

been done, we have refused a new trial ; but in general, a new trial is granted without inquiring further than is necessary in order to ascertain whether the party, by reason of some accident or misfortune, has been deprived of the opportunity of being heard."

See, also, to the same effect, *Railroad* v. *Stimpson*, 35 N. H. 286.

In the present case, there are important questions in issue, which we have no reason to doubt the party claiming the appeal desires and actually intends to try ; but although, as we have indicated, the court will not fully and critically examine the merits of the controversy, the petitioner will be required to furnish *some* evidence to the effect that the appeal is taken in good faith, that he actually intends to try the issues presented thereby, and some evidence tending to show the truth of the petitioner's allegations that the execution of the will in question was obtained by undue influence, or that the testatrix, at the time of making her will, was not of sound mind.

This evidence being supplied,

*Leave to appeal will be granted.*